UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HAROLD J. SHELL, JR.,

                            Plaintiff,

                                                        DECISION AND ORDER

                                                        00-CV-6152L

                v.

KEVIN V. BRUN, NICHOLAS BRZEZNIAK,
et al.,

                            Defendants.
_____

## INTRODUCTION

        Plaintiff, Harold J. Shell, Jr. ("Shell"), appearing *pro se*, commenced this action under 42

U.S.C. § 1983.  Plaintiff, who at the time of the filing of the complaint was an inmate in the

custody of the New York State Department of Correctional Services ("DOCS"), alleges various

civil rights claims against several individuals employed by DOCS.[1]

        By Decision and Order entered April 21, 2005, 365 F.Supp.2d 362, this Court granted in

part and denied in part plaintiff's motion to amend his complaint.  The Court permitted the

following claims to go forward:  plaintiff's claim against defendant James Stinson, who was the

superintendent of Great Meadow Correctional Facility ("Great Meadow"), alleging that

plaintiff's constitutional right of access to the courts was violated by the inadequacy of the

---

[1]According to the DOCS internet inmate lookup service, http://nysdocslookup.docs.state.ny.us, Shell was
released from DOCS's custody in September 2005.

inmate law library at Great Meadow; plaintiff's failure-to-protect claims against defendants Glenn Goord, Lucien LeClaire, Joyce Carver, Patrick Smith, Victor Herbert, David Caryl, G. Strubel and Richard Simmons regarding a November 28, 2000 incident at Attica Correctional Facility ("Attica"); and a retaliatory-assault claim against defendants Nicholas Brzezniak, Lee Franklin, Bruce Blenker, John Kolacz, Richard Simmons, Joseph Turello, Craig Balcer, and Timothy Pixley, arising out of the November 28, 2000 incident at Attica.  365 F.Supp.2d at 380.[2]

Defendants have now moved for summary judgment dismissing two of those three claims.  Defendant Stinson moves for summary judgment as to plaintiff's claim that Stinson denied Shell's access to the courts.  Defendants Goord, LeClaire, Carver, Smith, Herbert, Caryl, Strubel and Simmons all move to dismiss the claim charging them with failing to protect Shell in connection with the November 28, 2000 incident at Attica.  Defendants do not move at this time with respect to the other claim, alleging the use of excessive force against plaintiff by eight defendants on November 28, 2000.

Defendants have filed affidavits in support of their motion, as well as a memorandum of law, and plaintiff has submitted an affidavit in opposition to the motion (Dkt. #76).  Having reviewed both sides' submissions, the Court grants defendants' motion for summary judgment, and the complaint is dismissed on the law library and failure-to-protect claims, as set forth in the Conclusion of this Decision and Order.

---

[2]Based on plaintiff's prior complaint, those claims were referred to as the seventh, eleventh, and twelfth claims, respectively.  The other claims in that prior complaint have all been dismissed.

**DISCUSSION**

**I. Alleged Denial of Access to the Courts**

Shell's claim against Superintendent Stinson relates to an Article 78 proceeding that was eventually dismissed.  That proceeding related to a misbehavior report arising out of a 1997 incident at Attica in which plaintiff claimed he was assaulted by several guards.  Shell's petition was returned to him several times because it was in improper form and had not been verified.  Eventually the petition was dismissed by the state court as untimely.

In this action, plaintiff claims that his difficulties in prosecuting the Article 78 petition stemmed in part from various policies concerning the law library at Great Meadow, such as limitations on the number of books that inmates could borrow at one time, the hours when the library was open, etc.  At his deposition in this action, however, Shell conceded that he never had any direct contact with Stinson about these matters, and there is no evidence that he ever brought his concerns about these policies to Stinson's attention.  Dkt. #67 Ex. B at 94, 110.

Stinson now moves for summary judgment dismissing this claim based on his lack of personal involvement in the alleged constitutional violation.  The motion is granted.

A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation.  *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001).  That requirement may be satisfied by alleging facts showing that:  (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal,

failed to remedy the wrong; (3) the defendant created a policy or custom under which

unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4)

the defendant was grossly negligent in supervising subordinates who committed the wrongful

acts; or (5) the defendant exhibited deliberated indifference to others' rights by failing to act on

information indicated that constitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865,

873 (2d Cir. 1995); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Plaintiff has demonstrated no such facts here. In fact, in his affidavit in response to

defendants' motion, plaintiff does not even mention Stinson. *See* Dkt. #76.

The only evidence concerning Stinson, then, is that he was the facility superintendent,

which is not enough to establish his liability under § 1983. *See Reynolds v. Giuliani*, 506 F.3d

183, 191 (2d Cir. 2007) (noting that there is no *respondeat superior* liability under § 1983).

There is no evidence that Stinson knew of the alleged problems with the law library, that he

failed to remedy a known problem, or that there was a policy and custom of preventing inmates

from obtaining verification of petitions.

Many of the alleged problems with the library involve discrete events (such as facility-

wide lockdowns and inmate law clerks' alleged errors) that do not implicate any general policies

of which Stinson might have been aware or which he might have authorized or permitted to exist.

*See Applegate v. Annucci*, No. 02-CV-0276, 2008 WL 2725087, at *17 (N.D.N.Y. 2008 July 10,

2008) (dismissing inmate's law library claim for lack of defendants' personal involvement). To

the extent that this claim is based upon general law library policies, there is no indication that

Stinson was aware of or responsible for those policies, but even if there were, there is no evidence upon which to find a constitutional violation in the first place.

Shell alleges, for example, that the library was not open on weekends, and that inmates were limited to borrowing no more than two books at a time.  That a prison law library may not be to an inmate's liking in some respects does not make it constitutionally inadequate, however. Prison officials may place reasonable restrictions on inmates' use of facility law libraries, as long as those restrictions do not interfere with inmates' access to the courts.  *See*, *e.g.*, *Shango v. Jurich*, 965 F.2d 289, 293 (7th Cir. 1992) (prisoner was not denied access to courts because prison's law library was closed nights, weekends, and holidays, and at other times due to lockdown, construction, or shortage of guards or librarians, absent any evidence of any detriment or prejudice suffered by prisoner in any litigation); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 138 (9th Cir. 1987) ("prison officials may place reasonable limitations on library access in the interest of the secure and orderly operation of the institution"); *Walker v. Mintzes*, 771 F.2d 920, 931 (6th Cir. 1985) (Constitution does not mandate "any specific amount of library time which prisoners must be provided; rather, access need only be reasonable and adequate"); *Twyman v. Crisp*, 584 F.2d 352, 357-58 (10th Cir. 1978) (stating that "restricted access to the law library is not *per se* denial of access to the courts" and that "prison regulations which reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of legal papers do not transgress the constitutionally protected rights so long as the regulations do not frustrate access to the courts"); *Oliver v. Head Sheriff of Nassau County*, No. 07-CV-4355, 2008 WL 238577, at *2 (E.D.N.Y. Jan. 28, 2008) ("the Constitution does not require unlimited and

unrestricted access to a law library at the demand of a prisoner.  Prison officials may impose reasonable restrictions on the use of a prison law library").

Although Shell may believe that the limitations on library hours, book withdrawals, and the like made it more difficult for him to prosecute his Article 78 petition, there is no indication that those policies were unreasonable or that they restricted his access to the courts, nor is there any evidence that the outcome of Shell's Article 78 proceeding would have been different but for those policies.  The claim against Stinson is therefore dismissed.

## II. Failure-to-Protect Claim

Next, defendants move to dismiss the failure-to-protect claim, which is asserted against eight defendants, concerning the November 28, 2000 incident at Attica.  This incident occurred during a time when Shell had been temporarily transferred from Great Meadow to Attica, so that he could participate as a plaintiff in a New York Court of Claims trial being held at the Wyoming Correctional Facility.[3]  That trial concerned plaintiff's claim that he had been assaulted by several officers at Attica in March 1997.[4]

In letters to defendants Attica Superintendent Herbert and DOCS Commissioner Goord dated November 19 and November 22, 2000, plaintiff had complained about a number of matters, and expressed some concern about his safety.  In his November 22 letter to Goord, Shell

---

[3] Attica Correctional Facility and Wyoming Correctional Facility are, respectively, maximum and medium security facilities located in Attica, New York.

[4] After a trial, plaintiff's claim was dismissed by the Court of Claims.  Plaintiff's claim in the case at bar based on the alleged assault in March 1997 was dismissed by this Court in 2005 on the ground that it was barred by collateral estoppel.  362 F.Supp.2d 398, 401-02.

stated that he had previously been "maliciously attacked and beaten by numerous corrections officers" during a previous stay at Attica, that he "d[id] not want to be subjected to another unprovoked beating at the hands of [DOCS] corrections officers," and that he "believe[d] it [wa]s evident that [his] safety [wa]s questionable as long as [he] remain[ed] at Attica."  Dkt. #69 Ex. B.

Defendant Simmons spoke to Shell about his concerns on November 21, 2000.  Simmons states in a declaration that he explained to plaintiff that among the officers who had allegedly been involved in the 1997 incident, only one was then working in A-Block, where plaintiff was being housed at Attica.  Simmons states that he told Shell that Simmons would see if Shell's return to Green Haven could be expedited, and that if Shell was expected to stay at Attica much longer, Simmons would look into getting him moved to a different housing unit.  Dkt. #69 ¶ 6.

Simmons further states that Shell was scheduled to be moved back to Green Haven but that his return trip was delayed by a snowstorm and the Thanksgiving holiday.  Plaintiff was then scheduled to be taken back to Green Haven on November 28, 2000, the day on which he claims he was again assaulted by several of the defendants in this action.[5]  Plaintiff alleges that this assault was unprovoked and was carried out in retaliation for his lawsuit and testimony concerning the alleged 1997 assault.

To establish a § 1983 claim for failure to protect, a prison inmate must show that prison officials acted with deliberate indifference to a "substantial risk of serious harm" to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "[T]he official must both be aware of facts from

---

[5]Plaintiff does not appear to dispute that he was scheduled to be returned to Green Haven on November 28, or that he would have been moved sooner but for the weather and intervening holiday.

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id.* at 837.

As the Court of Appeals for the Seventh Circuit has explained,

[i]n failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.  Mere negligence (for example if a prison guard should know of a risk but does not) is not enough to state a claim of deliberate indifference under the Eighth Amendment.  It is also not sufficient to show that the prison guard merely failed to act reasonably.

*Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (internal quotation marks and citations omitted).

Applying these standards here, I conclude that plaintiff's failure-to-protect claim must be dismissed.  There is no proof that the defendants acted with any deliberate indifference to the Shell's safety.  Although Shell had expressed concerns about being back at Attica to testify against some officers who still worked there, he did not identify any specific threat to his safety, outside of the 1997 incident itself, which had occurred over three and a half years earlier.  At the time that plaintiff wrote his letters to Herbert and Goord, there was no proof that the officers in question actually had assaulted plaintiff in 1997 (and the Court of Claims subsequently found that they had not), and there was no reason for defendants to presume that those officers, or any other DOCS employees at Attica, were likely to assault plaintiff because of the prior incident or his then-pending proceedings in the Court of Claims and in this Court.

It is not uncommon for inmates to request transfers or to complain about perceived problems between them and correction officers, nor is it unusual for inmates to pursue grievances and lawsuits against the very officers who are assigned to watch over them.  That alone will not give rise to liability under § 1983 for failing to protect them in the event of an altercation

between the inmate and an officer.  As stated, there can be no liability absent a particularized threat to the inmate's safety, which was lacking here.

Even if, in hindsight, it might have been wiser to have moved plaintiff to a different area sooner, that will not give rise to a constitutional claim.  As stated, mere negligence is not enough. Plaintiff must show both that defendants knew of a particularized threat to his safety, and that they deliberately ignored that threat.  *See Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996) ("there being no solid evidence here of an identifiable serious risk to Davis's safety, the prison officials were not deliberately indifferent in returning him to the general prison population, and they were entitled to summary judgment"); *Nolen v. Goord*, No. 02 CV 499, 2006 WL 448686, at *9 (W.D.N.Y. Feb. 17, 2006) ("Nolen does not point to any piece of evidence ... which would have put the defendants in this case on notice of an actual or specific threat of harm to him prior to the June 22, 1999 attack.  Under these circumstances, the plaintiff's failure to protect claim cannot stand").

## CONCLUSION

The defendants' motion for summary judgment on plaintiff's seventh and eleventh claims (Dkt. #66) is granted.  Plaintiff's seventh claim, against defendant James Stinson, is dismissed, and plaintiff's eleventh claim, against defendants Glenn Goord, Lucien LeClaire, Joyce Carver, Patrick Smith, Victor Herbert, David Caryl, G. Strubel and Richard Simmons, is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       November 13, 2008.